IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:   3:08cr22/LAC/EMT
                                                    3:13cv502/LAC/EMT

GARY LAKEY

---

## REPORT AND RECOMMENDATION

This matter came before the court on Defendant Gary Lakey's "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255" and memorandum in support thereof (ECF Nos. 1009, 1010). The Government responded in opposition (ECF No. 1053), and Defendant filed a reply and joined his co-Defendant's notices of supplemental authority (ECF No. 1092; *see also* ECF Nos. 1191, 1193, 1186, 1187). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## BACKGROUND

Defendant and thirteen others were charged in a forty-count superseding indictment with various charges related to the international distribution of child pornography via the internet (ECF No. 78 (Defendant Lakey charged in Counts 1, 2, 8, 19, 31, 40)).   After a six-day jury trial during which he was represented by Albert Oram, Esq., Defendant was convicted of engaging in a child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g) (Count 1); conspiring to advertise, transport/ship, receive, and possess child pornography, and to obstruct an official proceeding, in violation of 18 U.S.C. §§ 371, 1512(k), 2251(e), and 2252A(b) (Count 2); receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2 (Count 31); obstructing justice, in violation of 18 U.S.C. § 1512(c)(2) (Count 40); advertising the exchange of child pornography, in violation of 18 U.S.C. § 2251(d)(1) and 2 (Count 8); and knowingly transporting and shipping child pornography, in violation of 18 U.S.C. § 2252A(a)(1) and 2 (Count 19) (ECF Nos. 78, 475, 605).   The court sentenced Defendant to a term of life imprisonment as to Count 1, 360 months as to Counts 2 and 8, and 240 months as to Counts 19, 31 and 40, with each count to run concurrently with the others (ECF No. 605).

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

Defendant Lakey and six other Defendants appealed, and the Eleventh Circuit vacated each Defendant's convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40.   United States v. McGarity, 669 F.3d 1218, 1229 (11th Cir. 2012).   The opinion stated no fewer than five times that the evidence against the Defendants, which included their own confessions, was nothing short of "overwhelming."   *Id.* at 1242, 1243, 1246, 1263.   Upon remand, the district court entered an amended judgment sentencing Defendant to life imprisonment as to Count 1, 360 months as to Count 8, and 240 months at to Counts 19 and 31 (ECF No. 915).   The Supreme Court denied certiorari (ECF No. 930).   Defendant timely filed the instant motion to vacate, raising 75 claims for relief (ECF Nos. 1009, 1010).

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of the trial and sentencing proceedings, the Pre-Sentence Investigation Report ("PSR"), the second amended judgment and statement of reasons, and Eleventh Circuit's opinion on appeal (ECF Nos. 78, 720–725, 762, 903, 1195).   Therefore, the undersigned will provide a somewhat abbreviated recitation of the facts here, and relay additional specific facts only as needed for resolution of the claims raised in the instant motion.

As set forth in the Eleventh Circuit's opinion, in 2005 an informant notified Constable Brenden Power of the Queensland, Australia Police Service of the existence of a computer ring of child pornography users that operated through internet newsgroups.   The informant revealed which newsgroups the ring was using, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring.   Constable Power began monitoring the ring and learned of the sophisticated nature of the ring, including controls on memberships and complicated methods of communicating and posting using encryption.   Members uploaded scrambled and encrypted binary files in one newsgroup, then would place a message in another newsgroup advising that the upload was there with instructions.   Other members could then download the encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download the files containing child pornography.   The group masked headings when posting files and messages and frequently changed nicknames as a further means of avoiding detection.

After realizing that the ring was operating internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit.   The joint investigation continued

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

for another year, during which time, law enforcement was able to identify 22 members of the child pornography ring, 14 of whom were people of special interest. Between August 31, 2006 and December 15, 2007, law enforcement detected the upload of over 400,000 images and more than 1,000 videos by ring members. Not all of the images and videos portrayed child pornography, but many of them depicted the sexual abuse of minors in graphic and grotesque detail.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the Defendants in this case. All Defendants except for one confessed his involvement with child pornography and with the child pornography ring in question. Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of all but one of the Defendants, including Defendant Lakey. Furthermore, after being taken into custody and housed together, six of the Defendants, including Defendant Lakey, admitted to the others his membership in the child pornography ring. McGarity, 669 F.3d at 1229–31.

## **ANALYSIS**

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" "   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct

appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is "'available' on direct appeal when its merits can be reviewed without further factual development."   Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."   Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted).

To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See* Nyhuis, 211 F.3d at 1344.

In this case, the Government argues that nearly all of Defendant's substantive claims are procedurally barred, or otherwise are not properly before the court on collateral review. Taken as stand-alone claims, the Government's assertions are largely well-taken. However, Defendant also raises claims of ineffective assistance of both trial and appellate counsel in his motion, which may defeat the procedural bar in some cases. Therefore, some substantive discussion will be included on Defendant's claims. However, in the interest of brevity, the court will not reiterate the standard for, or engage in a discussion of, the procedural bar on each of Defendant's substantive claims, recognizing that absent Defendant's ineffective assistance of counsel claim, they likely are not cognizable on collateral review.

### **Defendant's Individual Grounds for Relief**[1]

1. Failure to Preserve/Produce Evidence

---

[1] Related grounds for relief have been grouped for streamlined review.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

In Grounds 1, 2, 8, and 9, Defendant asserts the Government failed to preserve potentially exculpatory evidence, failed to provide the defense with the best evidence or with potentially exculpatory evidence, and failed to provide access to the evidence that it had seized.   He also claims, in Ground 73, that the Government hid or attempted to hide exculpatory evidence within "tens of thousands of documents" it provided to him, which hindered his efforts to prepare a defense.   In addition to asserting that such claims are procedurally barred, the Government argues that Defendant's assertions are factually without merit.

The Supreme Court held in Brady v. Maryland, 373 U.S. 83, 87 (1963), that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment."   In order to obtain relief on a Brady claim, Defendant must establish that: (1) the Government possessed evidence favorable to him; (2) he did not possess the evidence and could not have obtained it with reasonable diligence; (3) the Government suppressed favorable evidence; and (4) the evidence was material. Ponticelli v. Secretary, Florida Department of Corrections, 690 F.3d 1271, 1290 (11th Cir. 2012).   Defendant has failed to meet his burden.

In response to Defendant's claim in Ground 1 that the Government informant "selectively downloaded and saved messages . . . that he felt were relevant or may have indicated criminal activity," the Government notes that Constable Power downloaded all material relevant to the investigation and avers that the Government neither destroyed nor failed to download any exculpatory evidence (ECF No. 720 at 52–146; ECF No. 721 at 180–96).[2]   Defendant complains that the FBI did not issue a preservation letter, which prevented him from retrieving all messages from the relevant time period to place them in their proper context, and that failure to preserve the original materials also prevented him from showing that they had been falsified or tampered with by the Government.   Defendant offers no basis for his suggestion that any of the messages may have been falsified or tampered with, and his accusation and insinuation offer no basis for relief.

With respect to Defendant's claim that he was not provided with access to discovery, the attachments to the Government's brief—that is, communication concerning discovery that was provided—support its assertion that this information was provided directly to the defense or that the defense had the opportunity to review

---

[2] The page references to transcripts cited herein are to the court's electronic docket rather than the numbers as they appear on the hard copy of the transcript.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

it (ECF No. 1053, Exhs. B & C).   Exhibit C shows that defense counsel was provided with screen captures of file names of images and videos that were in Defendant's possession, and which were noted to be a "very small sample of the <u>hundreds of thousands</u> of images/videos" Defendant possessed (*see* ECF No. 1053, Exh. C) (emphasis in original).   The Government asserts that providing some of the evidence actually went beyond its discovery obligations.   Moreover, Defendant's own assertion in Ground 73, that the Government "hid" exculpatory evidence in the discovery it provided, admits both that he was provided with discovery and that such discovery included exculpatory evidence.

Defendant's citation to Federal Rule of Evidence 1002 in Ground 2 is inapposite as pertaining to discovery.   This rule, which provides that an original writing, recording, or photograph is required in order to prove its content, governs the type of evidence admissible at trial.

Defendant asserts in Ground 8 that the Government failed to provide several subpoenas it had allegedly cited in the search warrant affidavit but had not included in the discovery.   He contends that the subpoenas contain exculpatory evidence because they "in all likelihood show many instances in which a posting alleged to be by a defendant provided locations and details of material uploads by some other

individual not related to the case" (*see* ECF No. 1009 at 9).   He asserts that this theory was in direct conflict with the Government's theory of guilt, namely, that only the transporter would know the location and details, so no future evidence was required beyond the posting itself.   Attached to Defendant's reply is what purports to be a copy of a subpoena showing different binary image postings allegedly advertised by him, but which, he claims, were traced back to individuals that were not members of the Achilles group (ECF No. 1167, Exh. A).   Defendant's assertion that this information was not provided among the tens of thousands of documents he admits to having received, is unproven, as is his underlying assertion that it would have been exculpatory such that any alleged omission rose to the level of a <u>Brady</u> violation.

In sum, to the extent these claims are construed as alleging a violation of <u>Brady</u>, they fail.   Defendant has not shown that the Government intentionally suppressed any evidence material to the question of guilt or punishment.

   2.   <u>Procurement of the Indictment</u>

In Grounds 3 and 4, Defendant complains about irregularity in the indictment process.   First he claims that the Government unfairly delayed his indictment, resulting in the loss of relevant evidence.   He also asserts that the Government

improperly engaged in forum shopping by presenting its case in the Northern District of Florida after a grand jury in Maryland did not return the charges sought by the Government.

To the extent Defendant asserts that prosecution was improper in this district, he is mistaken. As noted by the Government in its response, this was a global operation. Dozens of conspirators were arrested on February 29, 2008, around the world. Clearly, the case was much more far reaching than just this one Defendant, and the Government had to choose the best time and an appropriate location for prosecuting its case.

With respect to venue, in a case involving a conspiracy, venue is proper "in any district where an overt act was committed in furtherance of the conspiracy." United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990); United States v. Matthews, 168 F.3d 1234, 1246 (11th Cir. 1999). Venue exists in any district in which an "offense was begun, continued or completed," and where an offense involves transportation in interstate or foreign commerce it may be "prosecuted in any district from, through, or into which such commerce moves." 18 U.S.C. § 3237(a); *see also* United States v. Bagnell, 679 F.2d 826 (11th Cir. 1982) (Government may prosecute pornography dealers in any district into which the

material is sent); <u>United States v. Kapordelis</u>, 569 F.3d 1291 (11th Cir. 2009) (citing <u>United States v. Rodriguez-Moreno</u>, 526 U.S. 275, 279–81 (1999)). The investigation initially began in the District of Maryland where the FBI's Innocent Images Initiative is located (ECF No. 1053 at 12). The grand jury investigation took place in the Northern District of Florida because co-Defendant Freeman committed acts in this district in furtherance of the conspiracy charged herein. As such, venue was not improper in this district, and Defendant has not shown a violation of his constitutional rights in this regard.

### 3. Procurement/Execution of Arrest and Search Warrants

Defendant asserts in Grounds 5 and 6 that the Government used excessive force and coercion during his arrest and interrogation, and that because he was afraid, he "would have confessed to absolutely anything the interrogators mentioned" and that there was "nothing voluntary about any statement, signature, or initialing under these coercive circumstances" (ECF No. 1009 at 8).[3] There is no record evidence supporting Defendant's version of events. The testimony from FBI Special Agent Robert Herzog revealed Defendant's willingness to cooperate and provide access to

---

[3] Defendant now denies that he ever confessed. Rather he claims that statements made to the FBI interrogators were coerced as well as misinterpreted (ECF No. 1010 at 12).

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

his usernames and passwords, and that upon Defendant's request, agents located Defendant's medication (purportedly for schizophrenia and manic depression) and assured him that he would have it wherever he was transported (ECF No. 723 at 12–28; ECF No. 1053, Exh. E).   Defendant asserts that the interrogator "implied leniency, telling [him] that if he cooperated the prosecutor and judge would be informed and things would go easier for him" (ECF No. 1009 at 8).   Defendant asserts that this was improperly coercive in that there was no way for the agent to know this.   Cooperation with the Government is typically the best way to mitigate one's sentencing exposure, and the fact that Defendant ultimately went to trial and as such did not benefit from his initial choice to cooperate in no way renders the investigative techniques invalid.   What is more, the court notes that to the extent that Defendant believes he has any factual basis for a claim that his civil rights were violated by actions taken during the interrogation and arrest, he could have brought a separate civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).   Such an action is independent of the question of his guilt or innocence of the charges in this case.

In Ground 12, Defendant claims that the Government's search warrant violated the Fourth Amendment and contained false and misleading statements.   He

complains that the warrant included "boilerplate" language that was used in at least thirteen other affidavits around the country, and that although the affiant attested that the warrant affidavit was based on his own personal knowledge and experience, the affiant had not participated in any aspect of the investigation and had little knowledge of the case until tasked with obtaining a search warrant.   Defendant fails to acknowledge that this fact is included in the affidavit itself.   Special Agent Robert Cochran expressly states in the affidavit that the statements therein are "based in part on information provided by other Special Agents of the FBI, [and] other law enforcement officers," in addition to his own investigation, experience, training, and background as a Special Agent (Case No. 3:08mj21/EMT (ECF No. 2 at 2)).

Defendant mischaracterizes many of the allegedly false and misleading statements he identifies in the affidavit (*see* ECF No. 1009 at 12).   For instance, Paragraph 16 does not describe "all persons who collect any images of children [as] 'sexually deviant'"; the term "enterprise" used in Paragraphs 17 and 18 did not originate from the Australian former member of the group; and the affidavit did not state either that the 403,442 images distributed or received by the enterprise were all child pornography, or that the production and trade of child pornography was the sole purpose of the enterprise.   Defendant also quarrels with the legal conclusion

contained in the affidavit that certain video segments described therein constituted child pornography.   Such a determination was unnecessary at that point.   The description of the contents of the videos as set forth in the affidavit merely served to add to the strength of the affiant's case that there was probable cause to support a search.   The undersigned finds that the affidavit, taken as a whole, was not false and misleading.   Defendant has not shown that the affidavit contains either "deliberate falsehood or reckless disregard for the truth," <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978), and his suggestion that it was constitutionally infirm is not well-founded.

In Ground 13 Defendant contends that the agent in charge of the arrest and search and seizure altered the list of seized items, which, according to Defendant, proves that the evidence had been tampered with, making authentication impossible. Defendant notes that the inventory list of the items seized from his residence originally contained one DVD disc and one CD disc, but that two days later the agent returned and altered the inventory sheet to reflect that law enforcement had seized three CDs (ECF No. 1009 at 13).   The Government notes that Defendant's rendition of events is mistaken.   At the conclusion of the search, FBI Special Agent Herzog completed an FD-597 receipt for property seized (ECF No. 1053 at 15 & Exh. G). The items were transported to the FBI office in Indianapolis.   A form prepared

contemporaneously with the events, on March 10, 2008, reflects that during a review of the evidence seized, Special Agent Herzog noted that three bags of miscellaneous CDs retrieved from Defendant's residence had not been documented on the FD-597, although they had been noted on the evidence recovery log (ECF No. 1053, Exh. H at 2).   Special Agent Herzog then completed a second FD-597 to document the missing items and attached a copy of the original search warrant and forwarded another copy to be left at Defendant's residence (*id*.).   Defendant has shown neither wrongdoing nor that he is entitled to relief.

    4.  Infirmity of the Superseding Indictment

    Defendant raises challenges to the sufficiency of the superseding indictment in Grounds 7 and 14.   First, he claims in Ground 7 that the language of the indictment parroted the statutory language without providing enough specific information about the underlying offense conduct or the co-Defendants involved in each charge for him to prepare a meaningful defense (ECF No. 1009 at 8–9).   The Government notes that multiple requests for bills of particulars addressed to this issue were denied by the district court (*see, e.g.,* ECF Nos. 321, 377).   Defendant's disagreement with the district court's decision and his desire to relitigate this issue herein does not entitle him to relief.   Furthermore, the fact that Defendant was

provided with the Government's discovery (*see, e.g.,* ECF No. 1053, Exhs. B, C) means that he was fully apprised as to what he would have to defend himself against should he choose, as he did, to go to trial.

In Ground 14, Defendant asserts that he was prejudiced by the indictment of multiple Defendants on substantive counts for offense conduct not occurring within the Northern District of Florida, due to the highly disturbing child pornography images involved in some of the counts.   As noted *supra*, venue is proper in any district where an offense was begun, continued, or completed and in any district from, through, or into which the unlawful commerce moves.   18 U.S.C. § 3237(a). Therefore, venue was proper in this district because the Defendants posted advertisements that reached this district and posted child pornography that was received in this district.   Furthermore, under a co-conspirator theory of liability, the Defendants who resided outside the Northern District of Florida aided and abetted Defendant Lakey's receipt of child pornography in this district and are criminally liable for the receipt of same under <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946). *See also* <u>United States v. Long</u>, 866 F.2d 402, 406–07 (11th Cir. 1989); <u>United States v. Stitzer</u>, 785 F.2d 1506, 1519 n.7 (11th Cir. 1986).   <u>Pinkerton</u> liability extends to "all acts and foreseeable consequences of the conspiracy."   <u>United States v.</u>

<u>Silvestri</u>, 409 F.3d 1311, 1335 (11th Cir. 2005).   Although he did not specifically make this argument, Defendant was not entitled to be tried alone merely because of the introduction of prejudicial evidence in a joint trial, or because he believed he had a better chance of acquittal in a separate trial.   *See* <u>United States v. Lopez</u>, 649 F.3d 1222, 1234 (11th Cir. 2011); <u>Zafiro v. United States</u>, 506 U.S. 534, 538–40 (1993). His assessment of the effect of prejudicial spillover, specifically as it relates to the length of time it took the jury to reach a verdict, is not probative (ECF No. 1010 at 3).   Defendant has not met his burden of showing he is entitled to relief.

    5.   <u>Improper Use of Government Witness</u>

Defendant contends in Ground 10 that the Government improperly used a confidential informant to obtain the defense trial strategy.   He asserts that in mid-2008, co-Defendant John Mosman and his counsel "covertly arranged a plea deal" whereby Mosman would remain incarcerated in the same county jail dormitory as the other Defendants and participate in meetings and discussions regarding trial strategies.   Defendant further contends that Mosman was able to access the laptop computer the co-Defendants had been provided to jointly review discovery, and that at one point he deleted large amounts of discovery in an attempt to disrupt the defense efforts.   Defendant claims that Mosman took notes and passed them on to

his lawyer and the prosecutor.  As seeming "proof" of the covert arrangement, Defendant cites the fact that Mosman did not enter his formal plea until the final deadline for doing so, and thereafter was transferred to another facility.   As further "proof," Defendant notes that a trial the Government had claimed would last four weeks was completed in five days.

Defendant's bald assertions do not prove his claim.   Furthermore, the Government notes in its response, as this court is well aware, the Office of the United States Attorney for this district does not engage in plea bargaining.    The Government explained at a pre-trial conference that it expected the trial to be shorter than anticipated in part because there were fewer Defendants proceeding to trial, but also because it had culled through the evidence (*see* ECF No. 763 at 16; *see also* ECF No. 720 at 10).   Defendant's arguments are based on rank speculation without any supporting evidence.

In Ground 11, Defendant asserts that the Government interfered with defense witness and co-Defendant Michael Berger, who pleaded guilty in this case.  He claims that Berger was a victim of unauthorized access to his computer, or "hacking," and not actually a member of the alleged conspiracy.  The other Defendants purportedly sought to have Berger testify as a defense witness about the

hacking and his online activities.   According to Defendant, the Government approached counsel for Berger and at least one other unidentified Defendant and warned that if Berger testified, evidence would be turned over to Berger's home state and the Government would "see to it that he was indicted on an unrelated allegation of video voyeurism" from ten years prior (ECF No. 1009 at 11).   The Government allowed Berger to plead guilty to a single "unrelated" count of receipt of child pornography.

Defendant's assertions are, again, factually unsupported.   Appended to the Government's response is a letter from Mr. Berger's attorney regarding his conversations with co-Defendant Mumpower about the conspiracy, and his desire to cooperate with the Government in order to receive a Rule 35 motion (ECF No. 1053, Exh. J).   The record reflects that on October 2, 2008, Berger, as part of the instant conspiracy, pleaded guilty to Count 26 of the Superseding Indictment, not an "unrelated" charge (*see* ECF Nos. 288–290, 855–2).   The transcript of Berger's rearraignment also reflects that pursuant to Berger's plea the Government agreed that it would not prosecute him in the District of Maryland for a crime committed in that district (ECF No. 855-2 at 83–84).   Berger was sentenced on December 16, 2008, before trial began in Defendant's case (ECF Nos. 386, 387).   Thus, there was

nothing preventing the defense from calling him to testify at trial, had it chosen to do so.   Berger's motivation to earn a Rule 35 motion, rather than impropriety on the part of the Government, might have prevented him from being a defense witness.

6.  Speedy Trial Violation

Defendant claims in Ground 15 that he was denied a speedy trial because 300 days elapsed between his March 13, 2008, first appearance before a magistrate judge and his trial, which commenced on January 5, 2009.   He complains that counsel waived speedy trial on July 21, 2008 after the 70-day statutory limitation had already expired (ECF No. 249), and that trial was delayed a further 199 days with no waiver and no benefit to the defense.

The record reflects that on May 5, 2008, the Government filed, with the acquiescence of all Defendants, a Joint Motion to Continue Trial Date (ECF No. 201).   This was the first of several continuances.   The Government notes that between Defendant's arraignment and the return of the superseding indictment, there were multiple motions that tolled the speedy trial clock, which Defendant concedes (ECF No. 1053, at 20 n.10; ECF No. 1167 at 18).   The defense never moved for dismissal of the indictment as a result of an alleged speedy trial violation, and no objection was preserved.   His bald assertion that counsel should not have agreed to

the delay as Defendant "gained nothing from the delay, including time to prepare,"
does not entitle him to relief.

7. <u>Infirmity of Jury Venire and Selection Process</u>

Defendant raises three related claims regarding the alleged infirmity of the
jury venire and the selection process.   He claims in Ground 16 that the jury venire
was inadequate due to its size, noting that only 49 individuals appeared.   In Ground
17, Defendant claims that the defense was "forced to use peremptory strikes in order
to excuse jurors who should have been dismissed for cause."   He also claims that
the court was reluctant to, or refused to, dismiss jurors for cause due to the small size
of the jury pool.   In Ground 48, Defendant claims that the district court abused its
discretion when it empaneled an inadequate number of jurors in the venire and
consequently refused to dismiss jurors for cause.

Due process requires that "the jury must stand impartial and indifferent to the
extent commanded by the Sixth Amendment."   <u>Morgan v. Illinois</u>, 504 U.S. 719,
727 (1992).   The seating of any juror who should have been dismissed for cause
requires reversal.   <u>Skilling v. United States</u>, 561 U.S. 358, 395–96 (2010) (citing
<u>United States v. Martinez-Salazar</u>, 528 U.S. 304, 316 (2000)).   Defendant identifies
four jurors that he believes should have been stricken for cause:   Juror #2, whose

wife was an elementary school principal; Juror #23, a kindergarten teacher who expressed a bias against the Defendants; Juror #25, who stated that she had been molested as a child by a stranger; and Juror #33, who stated that the daughters of her only two friends had been sexually abused and that she had worked in the State Attorney's Office assisting in the prosecution of sexual abuse cases (ECF No. 1009 at 15).

Defendant's assertions about the court's "refusal" to strike jurors for cause are not supported by the record.   Contrary to his assertion, a defense attorney may move to strike a juror for cause, and in fact attorney Clinton Couch made such a challenge (ECF No. 758 at 68–70).   The court merely advised counsel that it would count the challenge for cause as one of the 14 challenges allotted to the defense (ECF No. 758 at 70).   Thus, Defendants as a group received more challenges than those allotted under Rule 24(b)(2) of the Federal Rules of Criminal Procedure, and there was no operative difference between a challenge for cause and a peremptory challenge. And, despite Defendant's complaint, the record reflects that each of the jurors described above was stricken by the defense (ECF No. 758 at 71–75).   Moreover, the undersigned notes that the Defendants as a group did not exhaust their 14 challenges (ECF No. 758 at 75–76).   Defendant has not shown that the jury

ultimately empaneled was biased or that the outcome of the proceedings would have been different with a larger venire, and he is not entitled to relief on this ground.

In Ground 45, Defendant contends that the district court abused its discretion when, in charging the jury with its duties at the beginning of trial, it asserted a belief in the "Good Book."   Defendant claims that this suggested the jury should follow "the dubious morals of that tome rather than the proper laws of Congress" (ECF No. 1009 at 29).   The reference in question actually occurred during jury selection, while the court was explaining the standard of proof required in a criminal case, proof beyond a reasonable doubt.   The court stated, "To use an example, our scientists continue to tell us that for over five billion years the sun has been coming up every day, and that suggests to me that it is probably reasonable to expect that the sun will rise tomorrow.   On the other hand, those of us who believe in the Good Book know that it says one day that sun will not rise, and that also could be tomorrow." (ECF No. 758 at 38).   The court went on to explain that a possible doubt about the sun not coming up the next day was not a reasonable doubt, and then asked the jurors whether they would require proof beyond any doubt before they were willing to return a verdict of guilty.   This single isolated reference cannot reasonably be construed as the court telling the jury "to use Christian morals from

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

the Bible to determine guilt" as Defendant claims (ECF No. 1009 at 29).   It in no way contaminated the venire panel or rendered the resulting jury constitutionally infirm.

8.  <u>Improper Testimony/Evidence Used at Trial</u>

Defendant raises multiple claims regarding the testimony and evidence adduced at trial.   He claims, primarily, that evidence was improperly introduced at trial and makes arguments about the credibility of the testimony presented (*see* ECF No. 1010 at 33–39).   Such arguments are not proper in light of the procedural posture of this case.

Defendant contends in Ground 18 that the Government solicited impermissible hearsay from an FBI agent.   Defendant notes that Constable Power was the undercover agent who downloaded, decrypted, read, and saved all postings from the alleged conspiracy, and that Power testified generally at trial about how messages are decrypted, and how everything he downloaded and decrypted was saved on two removable hard drives which were admitted at trial over objection (ECF No. 720 at 56, Trial Exhibits 1A and 1B).   Defendant complains that because it was FBI Special Agent Charles Wilder who testified as to the authenticity of the various decrypted messages and materials, Defendant was unable to cross-examine

Power regarding the actual downloading and decrypting of the messages or otherwise challenge their authenticity (ECF No. 721 at 134–39).

The Government notes that Constable Power was available through the entire trial and, in addition to the defense being able to cross-examine him during the Government's case in chief, the defense could have called him as a defense witness. It further notes that Special Agent Wilder's testimony was limited to a review of Defendant's postings, or evidence that was directly or circumstantially linked to Defendant via records and/or tracing, and that he did not authenticate the actual decrypting/downloading process (ECF No. 722 at 221–56).   Furthermore, Defendant has not shown how cross-examination about the authenticity of the postings would have altered the outcome of the proceedings (*see* ECF No. 1167 at 17–18).   Defendant's assertion in Ground 49 that it was an abuse of discretion of allow this testimony is procedurally barred and without merit.

Defendant next asserts, in Ground 19, that the Government solicited testimony about facts that witnesses could not have possibly known to be true and therefore "induced" perjury.   If a witness testified in error about some aspect of the operation of the conspiracy, this error cannot, without more, be attributed to nefarious intent on the part of the Government, and it does not entitle Defendant to § 2255 relief (*see*

ECF No. 1009 at 17, citing alleged testimonial errors at ECF No. 720 at 57, 64, 78, 86, 89, 92, 119).

In addition to factual inaccuracies, Defendant contends in Ground 60 that witnesses improperly testified as to "legal conclusions" when they identified certain images or videos as child pornography. Defendant's specific reference to the testimony of Special Agent Wilder regarding a "sampling of" child pornography was actually related to items seized from the home of co-Defendants Freeman and Castleman (ECF No. 721 at 211, 296). The Government notes that the jury was instructed on the definition of child pornography (ECF No. 469). Therefore, the jury was able to draw its own conclusion about the exhibits it viewed. Perhaps more significantly, the undersigned finds that the brief references complained of did not render the proceedings constitutionally infirm in light of the overwhelming evidence against Defendant, including actual video and photographic evidence.

In Ground 20, Defendant asserts that the presentation of what he characterizes as "inflammatory personal evidence" against two co-Defendants violated his constitutional rights. He identifies two pieces of evidence. The first is a CD containing child pornography that included what purported to be a personal note from the minor victim depicted in the images and videos on the CD, addressed to

co-Defendant Castleman's daughter, indicating that it was okay for her to "play together" like the victim and her father (ECF No. 721 at 286).   The second item is a typewritten confession by co-Defendant McGarity in which he admits that he molested his daughter in 1999 (ECF No. 723 at 232–33).   Similarly, in Ground 21 Defendant asserts that the presentation of inflammatory evidence against the six co-Defendants violated his rights.

It is certainly true that in a multi-defendant trial, evidence may be introduced against one defendant that is not probative of the guilt of another defendant. The Government is not barred by this fact from introducing the evidence at all.   With respect to the specific items Defendant challenges, the appellate court found a challenge to the admission of the CD to be meritless and not warranting discussion; it also ruled that the McGarity's confession was properly admitted.   McGarity, 669 F.3d at 1229 n.6, 1243–45.

It is a well-settled principle that it is preferable for persons who are charged together to also be tried together, particularly in conspiracy cases.   United States v. Green, 818 F.3d 1258, 1282 (11th Cir. 2016) (quoting United States v. Smith, 918 F.2d 1551, 1559 (11th Cir. 1990)); United States v. Browne, 505 F.3d 1229, 1268 (11th Cir. 2007) (citing Zafiro v. United States, 506 U.S. 534, 537–38 (1993)

("There is a preference in the federal system for joint trials of defendants who are indicted together")); United States v. Hill, 643 F.3d 807 (11th Cir. 2011). Cautionary instructions to the jury to consider the evidence separately, such as the one given in this case, are presumed to guard against prejudice. United States v. Francis, 131 F.3d 1452, 1459 (11th Cir. 1997) (quoting United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991)); Zafiro, 506 U.S. at 539; United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005). Severance is highly disfavored. Even in a case when two co-conspirators committed murder, the Eleventh Circuit has found that severance is not warranted. *See* United States v. Lopez, 649 F.3d 1222, 1233–36 (11th Cir. 2011). Thus, while Defendant argues strenuously that his trial should have been severed from that of his co-Defendants' (ECF No. 1010 at 26–33), he has not shown any constitutional basis for relief. Defendant's contention in Ground 50 that the district court abused its discretion as it relates to Grounds 19, 20, and 21 is without merit.

In Ground 22, Defendant argues that the Government's use of a large screen to broadcast the images and videos to the court and the jury violated his rights. He asserts that the images and videos were highly inflammatory and prejudicial, and he maintains that the Defendants had stipulated that they contained child pornography.

The Government correctly notes that the screen used at trial was the district court's evidence presentation system, and that there was no other screen in the courtroom that would have allowed the jury to see the evidence.    Although Defendant claims that the Government had the option to use still photos, presentation of the video evidence obviously required a different form of presentation.    Binding Eleventh Circuit precedent holds that the introduction into evidence of images containing child pornography is proper, notwithstanding a defendant's stipulation to that fact.    United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010).    A criminal defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it."   Old Chief v. United States, 519 U.S. 172, 186–87 (1997).   There was no constitutional error in the admission of the video and still evidence, and the Government presented only a fraction of the available images.   Furthermore, as to Ground 23—a complaint regarding the presentation of prejudicial evidence regarding "known victims"—this evidence was necessary because many Defendants did not want to stipulate that the images and videos were of "real" children (ECF No. 763 at 5; ECF No. 724 at 35).

In Ground 24 Defendant claims that the Government improperly solicited testimony regarding his post-arrest silence (ECF No. 721 at 70).   The identical issue

was addressed on appeal, and the Eleventh Circuit found no error.   <u>McGarity</u>, 669 F.3d at 1240–42.   It may not be relitigated herein.

Defendant contends in Ground 47 that the district court should have pre-screened the videos/images that were presented to weigh their "possible effect" on the jury.   There is no legal authority suggesting that this is required.   The court warned the prosecution against presenting too many images, but ultimately the Government was the master of its case and, following the court's warning, rightfully proceeded in the manner it deemed appropriate and necessary.   Defendant is not entitled to relief.

In Grounds 59 and 61, Defendant contends that the introduction of the prosecutor's work product as "evidence" in the case was prejudicial to him and that the district court erred in allowing its introduction.   Specifically Defendant complains that charts listing nicknames and groups in the conspiracy and summarizing evidence should not have been admitted.   The Government argues that summary charts are admissible pursuant to Federal Rule of Evidence 1006, although Defendant correctly notes that this rule provides for the use of summaries to "prove the content of voluminous writings, recordings or photographs that cannot be conveniently examined in court."   Still, the court does not find that Defendant has

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

shown that the admission of the summary exhibits was in violation of his constitutional rights or somehow altered the outcome of the proceedings against him. *See, e.g.,* United States v. Francis, 131 F.3d 1452, 1457–59 (11th Cir. 1997) (discussing approved use of summaries of evidence).   Furthermore, counsel reminded the jurors of the limited use of summary charts during closing arguments (ECF No. 760 at 66).

9.   Variance and Sufficiency of the Evidence at Trial

Defendant challenges the sufficiency of the evidence against him to sustain a conviction on the various charges in Grounds 25, 26, 27, 28, 29, and 32.   Of course, because the convictions on Counts 2 and 40 were vacated on appeal, Defendant's challenge to his conviction on these two counts (including in Grounds 30 and 31 of the instant motion) is moot.   A claim that the evidence was insufficient to support a conviction on Counts 1, 8, 19, and 31 is not a constitutional claim cognizable on collateral review.   Additionally, as noted by the Eleventh Circuit, the evidence presented in this case was overwhelming.   Thus, even if cognizable, Defendant is not entitled to relief.

In Grounds 28 and 29, Defendant asserts that the evidence presented by the Government to support his conviction on Count 8, in which he was charged with

advertising child pornography, was a material variance from the indictment and also insufficient to sustain his conviction.   He also claims in Ground 33 that this conviction, as well as his conviction on Count 18 for transporting child pornography, was based on protected speech.   As to the latter claim, child pornography is not entitled to First Amendment protection.   *See* <u>New York v. Ferber</u>, 458 U.S. 747 (1982); <u>Ashcroft v. The Free Speech Coalition</u>, 535 U.S. 234 (2002).   As to the former claims, Defendant's suggestion that the Government was limited in its presentation of evidence at trial to only the evidence it presented to the grand jury is not well-founded.   Furthermore, his assertion that this was not a continuing offense is contradicted by the indictment itself which reveals that the offense charged in Count 8 was alleged to have occurred "between on or about August 31, 2006, through the date of the return of this superseding indictment" (March 18, 2008) (ECF No. 78 at 14).

Defendant also challenges the sufficiency of the evidence to support his convictions on Counts 1, 18, and 29 (Grounds 30–32).   As recognized by the Eleventh Circuit on appeal, the overwhelming evidence at trial supported his guilt of these specific charges.   Thus, even if cognizable, no relief is warranted on these claims.   Similarly, Defendant's assertion in Ground 52 that the district court abused

its discretion in denying his motion for judgment of acquittal is not cognizable and does not entitle him to relief.

      10.   <u>Improper Closing Argument</u>

      Defendant argues in Ground 33 that the prosecutor's closing argument and rebuttal were improper and violated his constitutional rights and that the district court should have granted a mistrial.  The propriety of remarks made during the prosecutor's closing argument was addressed on appeal; Defendant joined with defendants McGarity, Lambert, White, and Mumpower in contending that a mistrial was warranted.  <u>McGarity</u>, 669 F.3d at 1245.   Notably, the Eleventh Circuit agreed that some comments made by the prosecutor during closing were improper, but found the comments did not prejudice the substantial rights of the Defendants in light of the overwhelming evidence against them.  *Id.* at 1245–47.  Defendant's dissatisfaction with this result does not entitle him to relitigate his claim herein.

      11.   <u>Jury Instructions</u>

      In Grounds 34 through 38 Defendant argues that the jury instructions were unclear or improper, and in Ground 53 he asserts that the district court abused its discretion when it "mis-instructed" the jury.

Grounds 34 and 35 are directed to the allegedly confusing instruction with respect to Count 1, which failed to include a unanimity instruction. A unanimity instruction was required to ensure that the jury convicted each Defendant based on the same three predicate offenses. On appeal, Defendant challenged the lack of unanimity instruction and the Government conceded that same was required. The appellate court found, however, that the failure to include the instruction was harmless error. The Eleventh Circuit noted that each of the Defendants, with the exception of Defendant White, was convicted of three predicate continuing criminal enterprise ("CCE") offenses, to wit, advertising child pornography and transporting child pornography, as well as conspiracy, and that conspiracy remained a valid predicate offense notwithstanding the fact that it had been vacated as a lesser included offense. McGarity, 669 F.3d 1250–51 n.45. Because this issue was resolved on appeal, no further discussion is warranted.

Defendant argues in Ground 36 that the failure to provide a unanimity instruction on the substantive counts, as requested by his attorney, violated his constitutional rights. In response, the Government notes merely that the court utilized pattern instructions (ECF No. 469). Defendant argues that because the Government presented evidence of multiple advertisements, transports, and receipts

of child pornography, a unanimity instruction was required to ensure that the jurors unanimously agreed on which act or acts formed the basis for each conviction. Defendant's suggestion that, had such an instruction been given, the outcome of the proceedings would have been different, is purely speculative.  He has not shown that his substantial rights were affected, and he is not entitled to relief.  *See* United States v. Weiss, 539 F. App'x 952, 956–57 (11th Cir. 2013).

Ground 37 is a claim that counsel's failure to request an instruction regarding venue violated Defendant's rights.  Co-defendant Freeman was located in the Northern District of Florida.  Venue exists in any district in which an "offense was begun, continued or completed," and where an offense involves transportation in interstate or foreign commerce it may be "prosecuted in any district from, through, or into which such commerce moves."  18 U.S.C. § 3237(a); *see also* Bagnell, 679 F.2d at 826 (Government may prosecute pornography dealers in any district into which the material is sent); Kapordelis, 569 F.3d at 1291 (citing United States v. Rodriguez-Moreno, 526 U.S. at 279–81).  There was no legal basis to request such an instruction, and counsel is not ineffective for his failure to raise a meritless issue.

Defendant alleges in Ground 38 that the jury was improperly instructed on aiding and abetting.  This issue was thoroughly discussed during the jury charge

conference, with defense counsel taking the position that the Government's decision to charge the Defendants in separate counts of the indictment meant that they waived the ability to pursue aiding and abetting liability because a lone defendant cannot aid and abet himself (ECF No. 724 at 69–73).    After the court indicated its intent to give the standard aiding and abetting instruction, a co-Defendant's attorney objected to the instruction except as to Count 40 (ECF No. 724 at 126–27, 134).    The Government noted that the aiding and abetting instruction could be read in any case. The court found it to be proper and included the instruction (ECF No. 724 at 135). An issue such as this that was fully developed could have been raised on appeal.    In any event, Defendant has not shown that inclusion of this instruction violated his constitutional rights or that the district court abused its discretion in instructing the jury.

### 12.  Sentencing Issues

Defendant raises several issues related to sentencing.    Sentencing issues are typically not cognizable on collateral review, so Defendant attempts to cloak his claims in constitutional terms in an attempt to obtain relief.    Defendant contends that neither the facts in the PSR nor the Sentencing Guidelines enhancements were supported by the evidence at trial (Grounds 39–40), that the counts of conviction

were improperly grouped in the PSR, resulting in a higher offense level (Ground 41), and that he was sentenced based on a Guideline that did not take effect until after the conclusion of his offense conduct (Ground 62).

Section 2G2.6 of the Sentencing Guidelines, which assessed a base offense level of 35 to offenses involving child exploitation enterprises, took effect on November 1, 2007. Defendant's assertion that the court improperly used this guideline in his case, in which the offense conduct continued through his arrest in February of 2008, is simply mistaken.  Defendant has not shown an ex post facto violation, and Ground 62 is without merit.

Defendant's other sentencing issues are not cognizable.  The undersigned notes that counsel made various objections to the PSR and adopted the objections of other co-Defendants, but that these objections were largely overruled (ECF No. 762 at 48–62).  Mr. Oram argued that a life sentence was disproportionate and severely harsh under the facts of this case, and urged the court that the minimum mandatory sentence of 20 years on Count 1 was sufficient (ECF No. 762 at 60–62). Defendant's suggestion that the jury had to find certain facts relating to guidelines enhancements is mistaken.  His sentence was at or within the statutory maximum as to each count. "Under an advisory guidelines regime, judicial fact-finding about

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

relevant conduct that supports a sentence within the statutory maximum set forth in the United States Code does not violate the Sixth Amendment." <u>United States v. Belfast</u>, 611 F.3d 783, 827 (11th Cir. 2010); *accord* <u>United States v. Booker</u>, 543 U.S. 220, 233 (2005). The court did not state, as it had to one co-Defendant, that its sentence would be the same without considering its ruling on the objections that the defense raised to the PSR (ECF No. 835 at 48). Nonetheless, the seriousness with which the court viewed Defendant's offense conduct was unmistakable from the record. Defendant's sentence was not constitutionally improper.

Defendant argues in Ground 42 that he was penalized for exercising his right to a jury trial, rather than sentenced in accordance with the evidence, because the sentences of co-conspirators who pleaded guilty were lower than his and lower than their applicable guidelines ranges.

Defendants who plead guilty typically receive not only a three-level downward adjustment to reward them for accepting responsibility for their criminal conduct, but also the opportunity to cooperate with the Government in hopes of receiving an even greater reduction in their sentence. Thus, the fact that individuals who pleaded guilty received lower sentences is not only constitutionally permissible, it is unsurprising. This is not a sentencing disparity, but rather a reflection of

different circumstances.    Nonetheless, the court notes that counsel for co-Defendant Freeman made this argument at sentencing (ECF No. 835 at 40), to no avail. Defendant has not shown that he was so dissimilarly situated that if his attorney had presented the same argument to the court that the outcome of the proceedings would have been any different.

Defendant's contention that the sentence imposed for Count 2 was illegal (Ground 43) is moot.    As noted earlier, the conviction on Count 2 was vacated on appeal.    His assertion in Ground 44 that his sentences on Counts 1, 8, and 19 were the result of a double jeopardy violation is without merit.    Count 1 charged the Defendants with engaging in a CCE.    Defendant's convictions on Count 8 and Count 19 (in addition to the vacated Count 2) served as the necessary three predicate offenses for Count 1.    Participation in a CCE or conspiracy does not eliminate an individual's liability for any substantive offense conduct.

Finally, Defendant contends in Ground 54 that the district court abused its discretion in imposing upon him the maximum sentence.    The appellate court reviewed the propriety of all of the Defendants' sentences and found them to be neither grossly disproportionate nor in excess of constitutional limitations. McGarity, 669 F.3d at 1256.    There was no sentencing error that warrants relief.

Case Nos: 3:08cr22/LAC/EMT; 3:13cv502/LAC/EMT

13.    Jurisdictional Error

In Ground 46, Defendant contends that the district court abused its discretion when it failed to establish jurisdiction over the proceedings.   United States District Courts have original jurisdiction over all offenses against the laws of the United States.   18 U.S.C. § 3231.   Defendant was charged with multiple violations of laws of the United States, and as such jurisdiction was proper.

14.    Failure to Grant Mistrial After Prosecutorial Misconduct

In Ground 51, Defendant claims that the district court abused its discretion when it refused to grant a mistrial following "prosecutorial misconduct." Defendant identifies two instances of alleged misconduct.   The first is the alleged coercion surrounding Defendant's confession, discussed *supra* in Ground 6.   Even assuming the truth of Defendant's allegations, although there is no factual basis to do so in the record, the incident in question occurred prior to trial.   As such, a mistrial would not be an appropriate remedy.

Defendant next references Ground 38, which relates to the aiding and abetting instruction to the jury.   He offers nothing to support his claim that a mistrial was warranted, and he is not entitled to relief.

15.    Transgressions of the Eleventh Circuit Court of Appeals

In Grounds 55 through 58, Defendant challenges various actions of the Eleventh Circuit Court of Appeals.   Specifically, Defendant claims that the appellate court failed to follow its own and Supreme Court precedent, when it failed to establish that it had jurisdiction over the appeal, when it declined to consider the impact of issues it identified as meritless on other Defendants, and finally in holding that it was bound by prior precedent.   Assertions of error by the appellate court are not cognizable in this proceeding.   Defendant filed a petition for writ of certioari, the proper method for challenging the Eleventh Circuit's decision, but the United States Supreme Court denied the petition.   Lakey v. United States, 133 S. Ct. 381 (2012).   No relief is warranted herein.

    16.    Ineffective Assistance of Counsel

Defendant contends in Grounds 63 through 69 that his trial attorney, Albert Oram, was constitutionally ineffective in every stage of the proceedings generally, and he also identifies specific instances of alleged ineffectiveness beyond those claims already addressed in his motion and the discussion, *supra*, in this Report.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    Massaro v. United States, 538 U.S. 500, 503

(2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). Strickland's two part test also applies to guilty pleas.   Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).   A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.   Pericles v. United States, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)); Rosin v. United States, 786 F.3d 873 (11th Cir. 2015).   A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."   Padilla v. Kentucky, 559 U.S. 356, 372 (2010).   The Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and consideration of plea offers that lapse or are rejected."   In re Perez, 682 F.3d 930, 932 (11th Cir. 2012) (citing Missouri v. Frye, ––– U.S. ––––, 132 S. Ct. 1399 (2012); Lafler, 132 S. Ct. at 1376).   A defendant who claims that

ineffective advice led him to reject a plea offer must show that but for ineffective assistance of counsel, he would have accepted the plea, and that the conviction or sentence or both under the terms of the plea offer would have been less severe than under the judgment and sentence that were imposed.   Lafler, 132 S. Ct. at 1385. A defendant's insistence that he is innocent is a "relevant consideration" that "makes it more difficult to accept his claim" that he would have agreed to a plea deal.   *See* Osley v. United States, 751 F.3d 1214, 1224–25 (11th Cir. 2014).   In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable

professional assistance." <u>Hammond v. Hall</u>, 586 F.3d 1289, 1324 (11th Cir. 2009)

(quoting <u>Strickland</u>, 466 U.S. at 689); *see also* <u>Chandler v. United States</u>, 218 F.3d

1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of

counsel's conduct); <u>Lancaster v. Newsome</u>, 880 F.2d 362, 375 (11th Cir. 1989)

(emphasizing that petitioner was "not entitled to error-free representation").

Counsel's performance must be evaluated with a high degree of deference and

without the distorting effects of hindsight. <u>Strickland</u>, 466 U.S. at 689.   To show

counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take." <u>Gordon

v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); <u>Chandler</u>,

218 F.3d at 1315.   When reviewing the performance of an experienced trial

counsel, such as Defendant's attorney in this case, the presumption that counsel's

conduct was reasonable is even stronger, because "[e]xperience is due some

respect." <u>Chandler</u>, 218 F.3d at 1316 n.18.

 With regard to the prejudice requirement, a defendant must establish that, but

for counsel's deficient performance, the outcome of the proceeding would have been

different. <u>Strickland</u>, 466 U.S. at 694.   "The likelihood of a different result must

be substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 112

(2011) (quoting <u>Strickland</u>).     For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."     <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."     <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687).     Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001).    A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."     *Id.* at 203.

  To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.     <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987).     Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the <u>Strickland</u> test.     *See* <u>Boyd v. Comm'r, Ala.</u>

Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

The law is well-established that counsel is not ineffective for failing to preserve or argue a meritless claim.   Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This applies regardless of whether the issue is a trial or sentencing issue.   *See, e.g*., Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961

(11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands

of probable victory." <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

In light of the court's substantive review of Defendant's claims and the record, the undersigned concludes that Defendant has not shown that his attorney was constitutionally ineffective. Counsel aptly advocated for his client despite the strength of the Government's case and the evidence with which he was confronted. To the extent Defendant claims in Grounds 63, 64, and 66 that counsel was constitutionally ineffective due to his performance regarding the claims already discussed herein, Defendant is not entitled to relief. A decision not to pursue a meritless claim is not constitutionally deficient. Defendant's characterization of counsel's pre-trial motion practice as inadequate, and his suggestion that counsel was constitutionally ineffective because he failed to follow his client's advice about how to defend the case, do not accurately portray the record as a whole. Counsel

presented or joined in myriad pretrial motions, and not presenting a defense is, in many circumstances, the most reasonable defense strategy—not a constitutional failing.

Counsel was a vocal advocate for his client, joining counsel for co-Defendant Freeman's motion for a mistrial as a result of what the defense deemed was the prosecution's inflammatory closing argument, a description with which the district court disagreed (ECF No. 760 at 16, 18).   Additionally, in his closing argument, Attorney Oram offered the jury several strong arguments in support of finding that his client was not actually involved in the conspiracy, and suggested areas in which the evidence was lacking or conflicting (ECF No. 760 at 60–72).   As the other attorneys had done, Defendant Lakey's counsel reminded the jurors to make a decision based on reason, and not emotion.   The fact that this was ultimately unsuccessful is not tantamount to proof of a constitutional deficiency in counsel's performance.

In Ground 65, Defendant contends that trial counsel should have introduced a psychologist's report to counteract the Government's references to "pedophiles." According to Defendant, the report concluded that Defendant was not a "pedophile" but that he suffered from "a particular type of paraphilia dealing with compulsive

collecting of images of young girls" (ECF No. 1009 at 36–37).   Even if such a report were admissible, admission of the report and purported diagnosis was unlikely to benefit Defendant's case.   There was evidence from which a jury could have concluded that Defendant was, as many of the co-Defendants referred to themselves, an actual pedophile (*see* ECF No. 1053, Exh. L; ECF No. 760 at 17–18).   Regardless of the label placed on any of the Defendants, it was the evidence presented at trial which spoke the loudest.

In Ground 67, Defendant contends that counsel improperly advised him regarding the possibility of reaching a plea agreement with the Government.   He claims that he was told that he would not receive a sentence below twenty years, and that he was not advised about the possibility of cooperating with the Government. Defendant maintains that there is a "traditional unwritten rule" that individuals who provide such testimony would receive "at least a 65% reduction" in their sentence (ECF No. 1009 at 38).

Obviously, if counsel advised Defendant that he faced a mandatory minimum penalty, this advice was correct.   Defendant's suggestion that any substantial assistance reduction is guaranteed, much less one of the magnitude he suggests, is incorrect.   Whether a defendant receives a substantial assistance reduction, and the

extent of the reduction, depends on many factors.   The Office of the United States Attorney for this district does not engage in plea bargaining, and a specific sentence is not part of the standard plea agreement offered in this district. The Government notes that although seven co-Defendants entered guilty pleas, only three of them received substantial assistance motions and sentences below the statutory mandatory minimum.   This demonstrates that the entry of a guilty plea is no guarantee of a below guidelines sentence.   Defendant did not specifically state that he would have entered a guilty plea and admitted the charged conduct.   However, in light of Defendant's misunderstanding about the benefit of entering into a plea agreement, and his continued protestations of innocence, such a conclusion would not be supported.

In Ground 68, Defendant asserts that trial counsel provided ineffective assistance with respect to the allegedly coerced statement construed as a confession. Defendant now claims that he told law enforcement only that "he may in the distant past have posted 'child erotic art'" (ECF No. 1009 at 38).   He claims that counsel was constitutionally ineffective because he was unwilling to discuss Defendant's "intended meaning" by that statement, when Defendant tried to explain that he told law enforcement he had uploaded "legal child erotica" or "innocent pictures of

children arousing only in the minds of certain viewers" although Defendant was not such a viewer (*id.*).   Defendant claims that the statement was not a confession and counsel should not have viewed it as such, but rather that counsel should have examined this as a potential defense.   Even if some of Defendant's online activities were dedicated to files that did not meet the legal definition of child pornography, this does not excuse his involvement with images that did.

Defendant's last claim of ineffective assistance of counsel, Ground 69, is that counsel allowed fear of the judge's possible reprisal in future cases to prevent or curtail certain defense tactics.   For instance, Defendant claims that he inquired about unspecified "possible misconduct and recusal issues" and counsel told him that he was not going to risk possible future reprisal by the judge.   Defendant has not established that there was any basis for an allegation of misconduct or a motion for recusal.   As such, he has not shown either deficient performance or prejudice as a result of counsel's failure to move for same.

A review of the record as a whole contradicts Defendant's assertion that no reasonable attorney would have conducted his representation as Mr. Oram did. Defendant has established neither constitutionally deficient performance nor prejudice under Strickland, and he is not entitled to relief.

Case Nos.: 3:08cr22/LC/EMT; 3:13cv304/LC/EMT

17.    Ineffective Assistance of Appellate Counsel

Defendant raises four grounds for relief that are directly related to the performance of appellate counsel (Grounds 70 through 72 and 74).   He contends generally that appellate counsel provided constitutionally deficient assistance in preparing the direct appeal, and that counsel failed to seek rehearing of the Eleventh Circuit's decision or to present the proper claim of error to the United States Supreme Court.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–27 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.   Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger

than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* <u>Payne v. United States</u>, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing <u>Smith</u>).    "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   <u>Barnes</u>, 463 U.S. at 751–52.   In fact, this is the "hallmark of effective appellate advocacy." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986).   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.   *Id.*; <u>Heath</u>, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); <u>Reutter v. Secretary for Dept. of Corr.</u>, 232 F. App'x 914, 917 (11th Cir. 2007) (citing <u>Heath</u>).   Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.   <u>Brown v. United States</u>, 720 F.3d 1316, 1335 (11th Cir. 2013); <u>Shere v. Sec'y Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1311 (11th Cir. 2008); <u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing <u>Alvord v. Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Defendant claims in Ground 74 that appellate counsel did not raise over 50 potentially meritorious issues that he wanted raised on appeal.   The Government notes that Defendant's attorney raised thirteen individual counts of error, and takes the position that it would have been "unreasonable, if not ridiculous" to raise fifty or sixty arguments in the space allotted on appeal.   A review of the lengthy and thorough appellate opinion in this case, which resulted in two counts of conviction being vacated, does not suggest ineffective appellate advocacy in this case. Although the Eleventh Circuit found multiple arguments too weak to warrant discussion, it found a number of arguments merited significant analysis, although they were ultimately decided adversely to Defendant.   *See* McGarity, 669 F.3d at 1229.   Furthermore, as evidenced by the discussion in the foregoing sections, Defendant did not have any other issues of arguable merit, much less any "sure fire winners."

In Ground 70, Defendant claims that he was prejudiced by counsel's statement in his appellate brief that there was "certainly a need to punish" Defendant. Defendant portrays this comment as "virtual abandonment," and not one that a reasonable attorney would have made.   The undersigned disagrees.   As has been noted multiple times, the Eleventh Circuit found the evidence in this case to be

"overwhelming."   An acknowledgement that Defendant had been found guilty, coupled with an argument that nonetheless the sentence was "grossly disproportionate to [his] offenses and violate[d] the Eighth Amendment's prohibition on cruel and unusual punishment" would not have been unreasonable. Such a statement, made in the context of an appellate argument, did not render counsel's performance constitutionally infirm.   Defendant has not shown that appellate counsel's performance, taken as a whole was constitutionally ineffective, given the confessions and the "overwhelming" evidence presented at trial.   *See* McGarity, 669 F.3d at 1231, 1242–43, 1246.

Defendant contends in Ground 71 that appellate counsel was constitutionally ineffective in seeking rehearing of the direct appeal decision.   Defendant notes that counsel's "Notice of Adoption of Motions for Rehearing" was returned to counsel unfiled because it was untimely (ECF No. 1167, Exh. D).   None of the other Defendants were successful in obtaining a rehearing, and as such Defendant has not shown that he was prejudiced by counsel's tardy submission.

In Ground 72, Defendant claims that appellate counsel provided ineffective assistance of counsel in failing to seek certiorari before the Supreme Court. Defendant does not have a Sixth Amendment right to counsel to pursue discretionary

review in the Supreme Court.  *See* <u>Ross v. Moffitt</u>, 417 U.S. 600, 616–17 (1974);

<u>Wainwright v. Torna</u>, 455 U.S. 586, 587–88 (1982) (no right to counsel to pursue

discretionary review); *see also* <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991)

(citing <u>Wainwright v. Torna</u> for the proposition that "when there is no constitutional

right to counsel there can be no deprivation of effective assistance").   Defendant

does not contend that counsel did not advise him of the right to file such a petition.

*See* <u>Sessions v. United States</u>, 416 F. App'x 867, 869 (11th Cir. 2011) ("declin[ing]

to address the hypothetical question of whether it might constitute ineffective

assistance of counsel for an attorney to fail to advise a client of his right to file a

petition for a writ of certiorari in violation of the Criminal Justice Act Plan where

the client asserts that he would have filed such a petition if he had been informed.").

Rather, Defendant appears to contend that counsel indicated that he would assist

him, but failed to do so.   Whether counsel breached a gentleman's agreement to

assist Defendant in filing a pro se petition for a writ of certiorari is a separate

question from whether Defendant has established a constitutional violation.   He has

not, and as such, he is not entitled to relief.

> 18.   <u>Infirmity of Subpoenas</u>

In Ground 75, Defendant complains about the administrative subpoenas issued in this case, which were issued "without judicial review or certification in violation of the First and Fourth Amendments."   He claims that the language on the subpoenas regarding non-disclosure "would lead a reasonable person to believe they were required by law not to disclose issuance of the subpoena to the account holder" (ECF No. 1009 at 41).

Administrative subpoenas are governed by Title 18 U.S.C. § 3486.   Section 3486(a)(1)(A)(i)(II) authorizes issuance of these subpoenas in the investigation of a federal offense involving the sexual exploitation or abuse of children.   The respondent bears a heavy burden to disprove the existence of a valid purpose for an administrative subpoena.   *See* United States v. LaSalle Nat'l Bank, 437 U.S. 298, 316 (1978).   The Government, with its subpoena power, "does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *See* United States v. Morton Salt Co., 338 U.S. 632, 642–43 (1950); *see also* United States v. R. Enterprises, Inc., 498 U.S. 292, 295 (1991) ("[T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the

information is to ascertain whether probable cause exists."). Thus, issuance of the subpoenas, the contents of which are strictly limited by 18 U.S.C. §§ 3486 and 2703, was not improper.

The Government asserts, citing 18 U.S.C. § 3486(a)(1)(A) and (C), that it is authorized by statute to require non-disclosure to subscribers (ECF No. 1053 at 39 & n.17). Regardless of any such authorization to require non-disclosure, the actual sample subpoena itself reveals that the Government is correct in noting that that the subpoena "<u>requests</u>" rather than "<u>requires</u>" non-disclosure, although the recipient is also warned that "any such disclosure could interfere with an ongoing investigation and enforcement of the law" (ECF No. 1053, Exh. M). Even if a challenge to the subpoenas were cognizable in the instant proceeding, Defendant has not shown a basis for relief.

<u>Conclusion</u>

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

Case Nos.: 3:08cr22/LC/EMT; 3:13cv304/LC/EMT

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No.

1009) be **DENIED**.

2.      A certificate of appealability be denied.

At Pensacola, Florida, this 31<u>st</u> day of August 2016.

/s/ *Elizabeth M. Timothy*
_____

**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.